UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NORA CHAIB,                          )
                                     )
            Plaintiff,               )
                                     )
      vs.                            )     No. 1:13-cv-00318-TWP-MJD
                                     )
THE GEO GROUP, INC.,                 )
                                     )
            Defendant.               )

**ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

This matter comes before the Court on The GEO Group, Inc.'s ("Defendant") Motion for Entry of Protective Order, filed June 13, 2014. [Dkt. 73.] For the following reasons, the Court hereby **GRANTS** Defendant's motion.

### I. Background

Nora Chaib ("Plaintiff") filed her Complaint in February of 2013 pursuant to the Civil Rights Act, alleging unlawful termination due to sex, race, and national origin discrimination. [Dkt. 1.] In August of 2011, Plaintiff was hired to serve as a correctional officer at Defendant's Short Term Offender Program (STOP) facility in Plainfield, IN ("STOP GEO"). The next month, Plaintiff was promoted to Assistant Safety/Risk Manager, which title she held until her termination in June of 2012. [*See id.*]

During discovery, Plaintiff requested that Defendant produce "[a]ll staffing plans for the Plainfield facility from the beginning of the GEO Plainfield facility to the present." [Dkt. 73 at 1.] Without waiving its objections regarding the breadth and relevance of the request as worded, the Defendant agreed to produce "the portion of the staffing plan in effect in 2011 and 2012 related to the Assistant Fire Safety Manager position, pursuant to a protective order." [Dkt. 73-1

at 4.] However, when defense counsel reached out to Plaintiff's counsel for approval of its "Second Agreed Protective Order," Plaintiff's counsel refused to extend such approval on the basis that "[s]taffing plans for a public correctional facility are not confidential" and asserting that any document filed on the docket referring to a produced staffing plan should not need to be filed under seal, even temporarily. [Dkt. 73-3 at 3.] Based on Plaintiff's refusal to agree to the terms of Defendant's proposed protective order, Defendant filed this motion for entry of its proposed protective order [Dkt. 73], which is now before the Court.

## II. Discussion

Rule 26 of the Federal Rules of Civil Procedure states that a court may issue a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This allowance includes prescribing alternate methods of conducting discovery and requiring that certain confidential information "be revealed only in a specified way," among other methods of protecting a party's interests during discovery. *Id.* Although the court should be mindful of the public's general right to access court records, this right does *not* extend to discovery materials that have not yet been filed with the court or materials filed under a temporary seal. *See Bond v. Utreras*, 585 F.3d 1061, 1073-74 (7th Cir. 2009). The Supreme Court has long established that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

As a threshold issue, Plaintiff first contends that Defendant's staffing plans do not warrant the protection of a court order because they are public information. [Dkt. 77 at 1-2.] In reply, Defendant insists that the information contained in their staffing plans is "closely guarded," including "specific positions at the facility, how many people fill each position,

whether the position is full or part time, and, in some cases, which shift the individuals in the position work." [Dkt. 79 at 1-2.] Indeed, the website upon which Plaintiff relies to support her assertion that the information is already public clearly notes that STOP GEO is a "privately contracted institution[]," and therefore its "hire/rehire and termination/retire data is not provided" to the Department of Correction. [Dkt. 77-1 at 5.] Further, although Plaintiff attaches a staffing breakdown that appears to detail information similar to the kind of information allegedly contained in Defendant's staffing plans, the breakdown is not for STOP GEO but for the Madison Correctional Facility, which facility is not privately contracted. [*See id.*; Dkt.77 at 2.] Thus, Plaintiff has not adequately shown that Defendant's staffing plans are readily available to the public, which is entirely logical—if the information was publically available, Plaintiff would not need to request its production in the first place. Accordingly, The Court cannot deny Defendant's motion based on the false assertion that Defendant's staffing plans are publically available.

Plaintiff then asserts that Defendant's motion should be denied because "the public has an interest in discovery materials." [Dkt. 77 at 2.] To support her assertion, Plaintiff quotes Seventh Circuit law, stating that "[a]s a general proposition, pretrial discovery must take place in . . . public unless **compelling reasons** exist for denying public access to the proceedings." [*Id.* at 3 (quoting *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (emphasis added)).] Unfortunately for Plaintiff, this argument misconstrues the Rule 26 standard for issuing a protective order, and grossly misrepresents Seventh Circuit law. The first sentence of the Discussion section in *Jepsen*, indeed the first sentence of the very paragraph quoted by Plaintiff, reads: "**Absent a protective order**, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Jepsen*, 30 F.3d at 858 (emphasis added). Reading

further, the very next paragraph quotes the "good cause" standard of Rule 26(c), and the one after that acknowledges that the parties to the litigation in question had stipulated to a protective order, which the district court had granted. *Id.* In the end, the Circuit Court held that, even when the parties stipulate to the terms of a protective order, the district court still must make a "good cause" determination, modifying proposed protective orders as needed. *Id.* at 858-59. Although Plaintiff's selective quotation of binding law implies that only for limited "compelling reasons" can a protective order be granted, the true standard is whether "good cause" exists.

Plaintiff continues in her misunderstanding of protective orders by claiming that, should the Court issue Defendant's proposed protective order, the parties would be prohibited "from exchanging information with law enforcement and regulatory agencies," which would cause Defendant to be in violation of its contract with the State of Indiana. [Dkt. 77 at 3.] This is an absurd argument. The party protected by the terms of such an order is certainly permitted to disseminate their own confidential information as they would in their regular course of business—it is the party or person who *receives* the confidential materials through discovery who is to be held strictly to the terms of the protective order. Additionally, Plaintiff opposes the proposed order because it is "burdensome on the parties and the courts, because it requires that any documents, pleadings, briefs, and other documents that refer to the staffing plan must be filed under seal and then sealed or unsealed after briefing relating to every such pleading, brief, and document." [Dkt. 77 at 6.] The terms cannot truly be that burdensome however, as they are identical to the terms to which Plaintiff agreed, and the Court entered, in the parties' Agreed Protective Order. [*See* Dkts. 37, 39.] Thus, Plaintiff's arguments regarding the terms of Defendant's proposed protective order fail.

Finally,[1] Plaintiff argues that ordinary production of Defendant's staffing plans would not breach any safety interests because the inmates already see the numbers of security guards, knowing them by number and sometimes by name, and the STOP program is the facility that houses the least serious offenders. [Dkt. 77 at 3-4.] In reply, Defendant asserts that there is good cause for issuance of a protective order both for safety and for proprietary reasons. [Dkt 79 at 1.] Specifically, Defendant emphasizes that the staffing plans include not only the number of persons staffed in each position, as asserted by Plaintiff, but also "whether the position is full or part time, and, in some cases, which shift the individuals in the position work." [*Id.* at 2.] Just because the inmates are in a Short Term Offender Program and allegedly are sometimes familiar with the name or schedule of some of the security personnel does not mean that it would not pose a safety risk to grant unfettered public access to Defendant's staffing plans as a whole. Additionally, Defendant asserts good cause for a protective order not solely on the basis of safety but also on the basis of confidentiality, and Defendant's staffing plans are not publically available, as discussed above. Thus, in order to protect potential confidentiality and safety concerns, the Court finds that there is good cause to protect Defendant's staffing plans as "Confidential Materials," and Defendant's motion for protective order is **GRANTED**.

### III. Conclusion

For the aforementioned reasons, the Court hereby **GRANTS** Defendant's Motion for Entry of Protective Order. [Dkt. 73.] Because a protective order was previously entered in this case [Dkt. 39], Defendant's proposed protective order, with nearly identical terms save the

---

[1] While the Court acknowledges Plaintiff's concern for the risk of misappropriation of government funds in the private prison system [see Dkt. 77 at 4; Dkt. 77-4, 77-5], this is an employment discrimination matter—not one of breach of contract or misappropriation of funds (which issues Plaintiff may not even have standing to bring before a court). Plaintiff's related argument is therefore not appropriate and will not be evaluated by the Court. Should the documents at issue reveal evidence of such conduct when Defendant produces them, Plaintiff is free to bring such evidence to the Court's attention in an effort to obtain relief from this order.

inclusion of Defendant's staffing plans in the definition of "Confidential Materials," need not be issued. Instead, this order will suffice as an amendment to the parties' Agreed Protective Order [Dkt. 39], and the term "Confidential Materials" therein shall be understood to include "documents containing confidential information regarding The GEO Group, Inc's staffing plans for the Plainfield, Indiana Short Term offender program" [Dkt. 73-2 at 1].

Date: 09/24/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Emily L. Connor
LITTLER MENDELSON
econnor@littler.com

Alan L. McLaughlin
LITTLER MENDELSON PC
amclaughlin@littler.com