UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NORA CHAIB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00318-TWP-MJD |
| | ) | |
| GEO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant GEO Group, Inc. ("GEO Group") ([Filing No. 56](#)). Plaintiff, Nora Chaib ("Ms. Chaib"), filed this action against her former employer, GEO Group, alleging she was discriminated against on the basis of her race in violation of 42 U.S.C. § 1981 ("§ 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as based upon her sex and national origin in violation of Title VII. In addition, she alleges GEO Group retaliated against her after she complained about discriminatory conduct and for filing a workers' compensation claim under Indiana state law. GEO Group argues it is entitled to summary judgment on all of Ms. Chaib's federal claims because she was not meeting legitimate employment expectations and cannot show that GEO Group's reason for her termination was pretext. For the same reasons, GEO Group contends it did not retaliate against Ms. Chaib in violation of Indiana law. For the reasons set forth below, GEO Group's Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND**

As the summary judgment standard requires, the undisputed material facts and the disputed evidence are presented by the court in the light reasonably most favorable to Ms. Chaib as the non-

moving party. Ms. Chaib was born in France and is of French and Algerian descent. GEO Group provides private correctional and detention management, community re-entry services, and behavioral mental health services to government agencies worldwide. GEO Group operates the Short Term Offender Program ("STOP") facility in Plainfield, Indiana.[1] Ms. Chaib began working for GEO Group as a correctional officer at its STOP facility on or around August 8, 2011. At her orientation, she received and reviewed various GEO Group employment policies, including the Employee Handbook, Conduct Policy, Progressive Discipline Policy, the Sexual Harassment and Workplace Harassment policy, and the Equal Employment Opportunity Policy. On September 23, 2011, Ms. Chaib was promoted to the Assistant Safety Manager position. David Burch ("Superintendent Burch"), STOP's Superintendent, was Ms. Chaib's direct supervisor after the promotion.

A.      Ms. Chaib's Complaints

On October 31, 2011, Ms. Chaib complained to Human Resources that a co-worker, Denise Bondelie ("Ms. Bondelie") had made a "racist comment" and that Ms. Chaib "felt offended." Ms. Bondelie asked Ms. Chaib who a visiting "Black" employee was. When Ms. Chaib answered that he was the director if the region, Ms. Bondelie replied that he could not be because GEO Group did not have any Black men in the pictures of corporate representatives in the lobby. Human Resources investigated Ms. Chaib's complaint, and referred it to the Internal Affairs/Office of Professional Responsibility ("OPR") for further investigation. The Internal Affairs investigator did not substantiate Ms. Chaib's claims stating that "nobody else had heard the conversation." GEO Group took no further action on this matter.

---

[1] On November 18, 2010 The GEO Group, Inc. was awarded a contract from the Indiana Department of Correction to operate the Short Term Offender Program Facility (STOP). On March 21, 2011, the facility began receiving offenders. http://www.in.gov/idoc/3208.htm.

On December 19, 2011, Ms. Chaib got into a verbal altercation with her co-worker, Lieutenant Kevin Davis ("Lt. Davis"), about Ms. Chaib working over the weekend as a correctional officer. During the argument, Lt. Davis claimed that she had "stabbed him in the f____ back," called her a "stupid foreigner" and that she would "work sanitation." Two days later, Ms. Chaib called into GEO Group's employee hotline number to complain about the incident with Lt. Davis. GEO Group referred her allegation to OPR for investigation by Holly Strong ("Ms. Strong"). Lt. Davis disputed Ms. Chaib's version of the incident. Because Ms. Chaib could not corroborate her allegation against Lt. Davis with any other evidence, Ms. Strong concluded her investigation and determined she could not substantiate the allegation.

In late January or early February 2012, Ms. Chaib reported to Acting Assistant Superintendent Daniel LaFlore ("Mr. LaFlore") that she had discovered a document on her computer titled "Simplex Information" that contained an inappropriate comment. Simplex Grinnell is one of GEO Group's vendors who provide monitoring of smoke detectors and other alarms for the STOP facility. Specifically, the document was titled Smoke Detectors, but when Ms. Chaib opened the document it contained the statement: "All niggers remain on your bunk or you will be shot." Ms. Chaib did not know how the document or statement got onto the computer in her office and did not know how long it had been there. Mr. LaFlore asked Ms. Chaib to place the document on an external drive. After she did so, Mr. LaFlore removed the document and returned the drive to Ms. Chaib.

**B.     Ms. Chaib's Injury and Termination**

On March 6, 2012, Ms. Chaib was injured when a swinging gate struck her on the head. Specifically, on a windy day, the control room released the gate and it swung out suddenly, hitting Ms. Chaib in the head. Later that day, Ms. Chaib went to visit a physician and complained of a

3

headache, progressively blurred vision, nausea, dizziness, vomiting, and light sensitivity. The physician placed Ms. Chaib off work on March 6 and 7, 2012, and noted that she was not to drive. Ms. Chaib returned to the physician's office on March 8, 2012, with complaints of dizziness when getting up, headaches of 5 out of 10 on a pain scale, and difficulty sleeping. The physician placed Ms. Chaib under restrictions until March 11, 2012 of no lifting over five pounds, no repetitive motions/awkward positions, no walking or standing over an hour, and no operation of motorized vehicles. Ms. Chaib returned to the physician on March 12, 2012. At that visit, she complained that she felt no improvement and had been vomiting over the weekend. She also reported that her headache was 8 out of 10 on the pain scale and was worse when she stood up, and that she was experiencing trouble sleeping. The doctor placed Ms. Chaib off work on March 12 and 13, 2012, and instructed that she could not drive or operate machinery. She again went to the physician on March 14, 2012 and continued to complain of headaches, dizziness and nausea. The physician again placed Ms. Chaib off work until March 20, 2012 and directed her not to operate motor vehicles.

On or around March 14, 2012, GEO Group's Director of Claims Management, Kathy Chiarello ("Ms. Chiarello"), directed Sedgwick Claims Management Services, Inc. GEO Group's workers' compensation third party administrator, to hire an independent investigator to record Ms. Chaib's activities. Ms. Chiarello, who had never met Ms. Chaib, was suspicious because Ms. Chaib appeared to show no improvement after several days. At Ms. Chiarello's direction, the contracted investigators videotaped Ms. Chaib on March 17, 18, and 19, 2012, and recorded her changing the tags on her license plates, driving her car and running errands to the tanning salon, Dollar General store, drug store, auto parts store, multiple clothing stores, the grocery store on multiple occasions, a hair accessory store, a park, two gas stations, and several friends' homes.

On March 20, 2012, Ms. Chaib again visited the physician and complained of daily headaches, nausea, vomiting, and waning concentration. The physician placed Ms. Chaib off work, referred her to a neurologist, and directed that she should not operate motor vehicles.

On or around March 26, 2012, Ms. Chiarello received a report from the investigator along with a portion of the video surveillance. Ms. Chiarello watched the video and observed Ms. Chaib driving and running errands, and reviewed the investigator's report summarizing Ms. Chaib's activities. Ms. Chaib was scheduled to visit a neurologist, Dr. Karyn Vogel, M.D. ("Dr. Vogel"), on April 10, 2012. GEO Group forwarded the investigator's video to Dr. Vogel before the April 10, 2012 appointment. After reviewing the surveillance video and examining Ms. Chaib, Dr. Vogel concluded that the video showed no evidence that Ms. Chaib was at all impaired, and appeared to be functioning at a very normal level. Furthermore, Dr. Vogel stated, "I believe that there is likely malingering contributing to her persistent complaints. I do not see any sign on her exam today or in the surveillance video that would suggest that she has sustained any neurologic injury." ([Filing No. 58-3, at ECF p. 76](Filing No. 58-3, at ECF p. 76).)

After reviewing the surveillance video, investigator's report, and the neurologist's notes, Ms. Chiarello contacted GEO Group's Human Resources Director, Julie Owens ("Ms. Owens"), to inform her of the investigator's findings. Ms. Chiarello also forwarded a copy of the surveillance video to Ms. Owens. Ms. Owens then forwarded the video to Ms. Chaib's supervisor and Rose Wells ("Ms. Wells"), Human Resources Assistant for the STOP facility.

Ms. Chaib returned to work from her medical leave on or around April 17, 2012. On April 18, 2012, after watching the surveillance footage, Superintendent Burch placed Ms. Chaib on administrative leave for unbecoming conduct based upon workers' compensation fraud, effective immediately. During the meeting with Superintendent Burch Ms. Chaib told him that she told her

5

doctors she had been driving because she did not have a choice. Superintendent Burch then made the recommendation to terminate Ms. Chaib's employment for falsifying records. On June 14, 2012, GEO Group informed Ms. Chaib via letter that her employment was terminated for unbecoming conduct.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

As an initial matter, the Court must resolve GEO Group's Motion to Strike Surreply (Filing No. 111).

### A. Motion to Strike Ms. Chaib's Surreply

GEO Group objects to Ms. Chaib's surreply and has moved to strike it on the basis that the surreply exceeds the scope permitted by Southern District of Indiana Local Rule 56-1(d). (Filing No. 111.) GEO Group argues that Ms. Chaib is not responding to evidentiary objections or new evidence raised for the first time in the reply, but instead her surreply is merely a rehash of arguments previously made, and she has mistakenly characterized GEO Group's arguments as objections. GEO Group does not, as Ms. Chaib argues, object to the admissibility of any of her evidence; rather, they merely argue that such evidence is not material. Although the Court always tries to allow litigants a full and fair opportunity to respond to arguments made by their adversary, including allowing surreplies, *see e.g.*, *Pike v. Caldera*, 188 F.R.D. 519, 535–36 (S.D. Ind. 1999), surreplies are not allowed under the local rules unless they are to address newly raised evidence or arguments, or respond to objections raised in the reply. The Court agrees with GEO Group that Ms. Chaib's surreply is not limited to new evidence and objections; therefore, GEO Group's Motion to Strike Surreply (Filing No. 111) is **GRANTED** and Ms. Chaib's Surreply (Filing No. 110) is **STRICKEN**.

### B. Title VII and § 1981 Discrimination Claims

A plaintiff alleging race, national origin, or sex discrimination may show discrimination in one of two ways: either (1) through the "direct" method, by presenting direct and/or circumstantial evidence on the issue of discriminatory intent, or (2) by relying on the "indirect," burden shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973). *See Wyninger v.*

*New Venture Gear, Inc*., 361 F.3d 965, 978 (7th Cir. 2004). "Direct evidence is evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption . . . stated differently, direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 861 (7th Cir. 2007). Direct evidence of a defendant admitting discrimination is rare, so most cases are proven by circumstantial evidence. "Circumstantial evidence, unlike direct evidence, need not directly demonstrate discriminatory intent, but rather it 'allows a jury to infer intentional discrimination by the decision maker' from suspicious words or actions." *Id*. at 862 (quoting *Rogers v. City of Chi*., 320 F.3d 748, 753 (7th Cir.2003)).

Although Ms. Chaib argues there is ample circumstantial evidence to prove race discrimination under the direct method, the Court is not persuaded. Ms. Chaib has presented no direct evidence and insufficient circumstantial evidence to support her contention that GEO Group discriminated against her because of her race, gender, or national origin. She asserts that the anonymous racial statement on her computer and her complaints about discrimination because there were no pictures of Black persons on the wall and later that Lt. Davis was discriminating against her and other African-Americans is direct evidence of discrimination. However, none of the evidence cited shows that the decision makers held any discriminatory animus toward Ms. Chaib, nor is there any evidence that could impute liability to GEO Group for the allegedly offensive comments to which Ms. Chaib cites. The designations fail to establish a genuine issue of material fact utilizing the direct method; therefore, Ms. Chaib must proceed under the indirect method.

1. **Race Discrimination Claims**

With respect to Ms. Chaib's race discrimination claims, GEO Group argues that she cannot satisfy the first element of her prima facie case, which is that she is a member of a protected class. Ms. Chaib argues that she "self-identifies" as African-American based upon her Algerian ancestry, while GEO Group argues that because Ms. Chaib appears to be Caucasian she is not included within a protected racial class. While Title VII does not define the term "race," the Supreme Court has stated that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics . . . whether or not it would be classified as racial in terms of modern scientific theory." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (construing § 1981).

Ms. Chaib's argument that she was discriminated against based upon her Algerian descent conflates race and national origin. "[R]ace and national origin . . . are ideologically distinct categories." *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 35 (D.D.C. 2008) *aff'd sub nom. Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445 (D.C. Cir. 2009) (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (defining national origin as "the country where a person was born, or, more broadly, the country from which his or her ancestors came"); *Roach v. Dresser Indus. Valve and Instrument Div.*, 494 F. Supp. 215, 216 (W.D. La. 1980) (finding that the legislative history of Title VII precisely states that a person's national origin has nothing to do with race)). In addition to the undisputed evidence that employees at GEO Group perceived Ms. Chaib as Caucasian, the Equal Employment Opportunity Commission Guidelines for reporting employee demographics provides that for purpose of race and ethnic designations, "White (Not Hispanic or Latino)" is defined as "[a] person having origins in any of the original peoples of *Europe*, the Middle East, or *North Africa*." *See* Equal Employment Opportunity Standard Form 100, Employer Information

9

Report EEO-1 Instruction Booklet Appendix, O.M.B. No. 3046-0007, Revised January 2006, *available at* http://www.eeoc.gov/employers/eeo1survey/2007instructions.cfm (last accessed January 30, 2015) (emphasis added); Equal Employment Opportunity Commission Compliance Manual, Section 15: Race & Color Discrimination, 2006 WL 4673425 (June 1, 2006) (Racial categories are "social-political constructs . . . and should not be interpreted as being genetic, biological, or anthropological in nature."). Ms. Chaib cannot use her Algerian descent to form the basis of the claim that she is "African-American" merely because Algeria is on the continent of Africa. Algeria is located in North Africa, an area in which the Equal Employment Opportunity Commission considers the people "White." There is no credible evidence in the record that the employees considered Ms. Chaib "African-American;" thus the Court finds that Ms. Chaib has not shown that there is a question of fact as to whether she is member of a protected group for purposes of her race discrimination claims.

### 2. Legitimate Employment Expectations and Pretext

Regardless of whether Ms. Chaib can show that she is a member of all of the protected classes upon which her discrimination claims are based, and whether she can show she engaged in a protected activity, fatal to each of Ms. Chaib's claims is the fact that she cannot satisfy the forth element of her prima facie case for discrimination and retaliation, which is that she was meeting GEO Group's legitimate employment expectations at the time of her termination. Ms. Chaib argues that prior to her injury, she was meeting GEO Group's legitimate employment expectations and they cannot rely upon conduct that lead to her termination to argue that she was not meeting her employment expectations. "[W]hen a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of [her]

termination.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Intern. Transp. Corp.,* 948 F.2d 332, 336 (7th Cir. 1991)). Because GEO Group's proffered reason for terminating Ms. Chaib is also the basis for its conclusion that she was not meeting employment expectations, the question of whether her performance was satisfactory merges with the inquiry into whether the stated reason was pretextual. *See Jones v. Ill. St. Toll Highway Auth.*, 502 F. App'x 587, 591 (7th Cir. 2013) (citing *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010); *Senske v. Sybase, Inc.*, 588 F.3d 501, 506–07 (7th Cir. 2009); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008)). To demonstrate pretext, Ms. Chaib must show that the nondiscriminatory reason for terminating her is a lie masking discriminatory intent. *Id.*

Ms. Chaib has not presented any evidence that GEO Group's proffered reason for her termination—unbecoming conduct in the form of workers' compensation fraud—is a lie. To demonstrate pretext, Ms. Chaib must demonstrate that GEO Group's articulated reason for her discharge either: (1) has no basis in fact; (2) did not actually motivate her discharge; or (3) was insufficient to motivate her discharge. *Velasco v. Ill. Dep't of Human Servs.*, 246 F.3d 1010, 1017 (7th Cir. 2001). First, Ms. Chaib argues pretext because the restriction that she not drive was contained in Work Status reports for workers compensation that were sent to GEO Group and she did not know she was prohibited from driving during her leave. However, the proper inquiry is not whether Ms. Chaib knew that she was not supposed to drive, but whether GEO Group honestly believed that she committed workers compensation fraud by her activities, which included driving. Ms. Chaib admits that she engaged in the activities deemed by her employer to be inconsistent with the restrictions placed upon her by the physician, based upon her subjective complaints following her injury. Chaib Dep. 144:2-25 (Filing No. 58-3, at ECF p. 26).

Additionally, Ms. Chaib argues that she drove because she had no other way to get back and forth to her doctor appointments; however, this does not account for the other inconsistent activities she engaged in while she was off work. On March 20, 2012, one day following the last videotaping, Ms. Chaib reported to the physician that she still has daily headaches of the same intensity and that she continues to feel nauseated and dizzy. (Filing No. 58-3, at ECF p. 73). In the video, however, she is observed performing normal activities such as shopping, tanning, and visiting friends with no apparent difficulty. On April 10, 2012 Ms. Chaib told the physician that she was extremely dizzy, had poor energy, and could not do any normal activity including those requiring minimal exertion and that she sits on the couch all day. (Filing No. 58-3, at ECF p. 75.) Ms. Chaib also ignores neurologist Dr. Vogel's assessment, based upon her review of the video, that Ms. Chaib's activities and behavior were inconsistent with her alleged symptoms, and that she was of the opinion that Ms. Chaib was malingering. (Filing No. 58-3, at ECF pp. 75-76.) Ms. Chaib's focus on the fact that she drove while under a driving restriction as being the reason for her termination is too narrow; rather, she was terminated because GEO Group believed she was exaggerating the severity of her injury in order to collect workers' compensation benefits.

Ms. Chaib focuses much of her pretext argument on Lt. Davis's conduct and his treatment of other employees and prisoners. Importantly, Lt. Davis did not supervise Ms. Chaib and had no role in GEO Group's decision to terminate her employment. She argues that Lt. Davis was a "serial harasser" and that more than six complaints of discrimination had been filed against him by more than five different employees before he was eventually terminated by GEO Group. However, Lt. Davis's conduct, as well as complaints about his conduct, are irrelevant to Ms. Chaib's admission that she engaged in activities that a physician determined were inconsistent with her complaints as to her condition and functional ability. Ms. Chaib provides absolutely no evidence that GEO

Group fabricated the evidence and reason for her termination as a cover up for unlawful discrimination. At bottom, the verbal altercation with Lt. Davis and the offensive language in a document on her computer have nothing to do with the alleged workers' compensation fraud.

Finally, GEO Group's reason for Ms. Chaib's termination has always been consistent, contrary to her argument. *See* [Filing No. 92-9, at ECF pp. 59](#); [Filing No. 92-9, at ECF p. 77](#). There is no actual conflict in GEO Group's explanations of why it recommended and eventually terminated Ms. Chaib's employment. The only change was the recommended termination code, but all of the factual allegations remained the same. Thus, there is insufficient evidence from which a reasonable jury could conclude that GEO Group's stated reason for Ms. Chaib's termination was pretext for unlawful discrimination or retaliation. Therefore, GEO Group is entitled to summary judgment on Ms. Chaib's Title VII and § 1981 claims.

## C. Workers' Compensation Retaliation Claim

Ms. Chaib also asserts that she was discharged because she filed a workers' compensation claim, which is also known as a *Frampton* claim under Indiana law. *Frampton v. Central In. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). "In order to be successful on a claim for retaliatory discharge, a plaintiff must demonstrate that his or her discharge was solely in retaliation for the exercise of a statutory right." *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 212 (Ind. Ct. App. 2005). The Indiana Court of Appeals has explained that the use of the word "solely" means only that any and all reasons for the discharge must be unlawful in order to sustain the claim for retaliatory discharge. *Id.* In order to assert a *Frampton* claim, the employee must "present evidence that directly or indirectly supplies the necessary inference of causation between the filing of a worker's compensation claim and the termination." *Id.* at 213. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. *Id.* Finally, if the employer

carries that burden, the employee can prove, by a preponderance of the evidence, that the reason offered by the employer is a pretext. *Id.* This can be done by showing, for example, that the employer's proffered reason is factually baseless, is not the actual motivation for the discharge, or is insufficient to motivate the discharge. *Id.*

Ms. Chaib's *Frampton* claim fails for the same reason her Title VII and § 1981 discrimination and retaliation claims fail; she has not presented sufficient evidence to show that the proffered reason for her termination was pretext. Ms. Chaib is essentially challenging GEO Group's determination that she fraudulently obtained workers' compensation benefits by misleading them and her physicians regarding her injury and ability to work. The court does not sit as a "super-personnel" department to decide whether the business decisions of an employer are correct; the court's only concern is whether the employer honestly believed that reason. *Purdy*, 835 N.E. 2d at 214. Whether Ms. Chaib disagrees with GEO Group's conclusion is irrelevant, and she has offered no other evidence to show that she was terminated because of the workers' compensation claim itself, and not because her employer believed that she exaggerated the extent of her injuries. Therefore, the Court finds that Ms. Chaib has not presented a question of triable fact on her claim alleging she was terminated in retaliation for filing a workers' compensation claim, and GEO Group is entitled to summary judgment on this claim.

## IV. <u>CONCLUSION</u>

Ms. Chaib has failed to show that there are questions of material fact for the jury on all of the elements of her discrimination, retaliation, and *Frampton* claims. For the reasons set forth above, GEO Group's Motion for Summary Judgment ([Filing No. 56](Filing No. 56)) is **GRANTED,** and Ms. Chaib's claims are **DISMISSED with prejudice**.

**SO ORDERED.**

Date: 2/18/2015

*[Signature: Tanya Walton Pratt]*
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Alan L. McLaughlin
LITTLER MENDELSON, P.C. (Indianapolis)
amclaughlin@littler.com

Emily L. Connor
LITTLER MENDELSON, P.C. (Indianapolis)
econnor@littler.com